**LEAGUE OF MINNESOTA CITIES INSURANCE TRUST, Respondent,**

v.

**CITY OF COON RAPIDS, Appellant.**

**No. C9–89–817.**

Court of Appeals of Minnesota.

Oct. 10, 1989.

Review Denied Dec. 15, 1989.

Kenneth Gleason, James Mahoney, Mahoney, Dougherty. & Mahoney, Minneapolis, for respondent.

Dale M. Wagner, Philip A. Pfaffly, Christopher L. Farwell, Moss & Barnett, Minneapolis, for appellant.

Considered and decided by SCHUMACHER, P.J., and FORSBERG and GARDEBRING, JJ., without oral argument.

## OPINION

FORSBERG, Judge.

The City of Coon Rapids appeals from a judgment finding no liability coverage for alleged injuries individuals suffered as a result of toxic discharge at the city's ice area. We affirm.

## FACTS

Between December 1986 and February 1987, a number of individuals allegedly suffered lung injuries while inside an ice arena owned by the City of Coon Rapids, Minnesota. Coon Rapids is a member of the League of Minnesota Cities Insurance Trust ("Trust"), a self-insuring risk pool for Minnesota cities.

The injuries allegedly occurred when levels of nitrogen dioxide, a toxic by-product of a Zamboni ice cleaning machine, built up in the arena. In anticipation of claims resulting from this gas build-up, the Trust commenced the present declaratory action. The Trust contends the pollution exclusion in Coon Rapids' policy denies coverage for any claims against the city by victims of the gas build-up.

During the pendency of this declaratory action, various individuals brought suit against Coon Rapids for injuries sustained as a result of inhaling nitrogen dioxide at the arena ("*Johnson v. City of Coon Rapids*"). Plaintiffs essentially alleged the city was negligent in failing to adequately ventilate the arena, failing to properly maintain the Zamboni machine, failing to warn the plaintiffs, and failing to test the air quality as required by Minnesota health regulations. Additionally, plaintiffs alleged negligent infliction of emotional distress.

The insurance policy in question covers the city for claims involving bodily injury and property damage. However, it contains the following exclusion:

This policy does not apply to:
(1) "Bodily Injury" or "Property Damage" arising out of the actual alleged or threatened discharge, dispersal, release or escape of pollutants:

(a) at or from premises you own, rent or occupy;

   *     *     *     *     *     *

(d) at or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations:

  (i) to test for, monitor, clean up, removal, contain, treat, detoxify or neutralize the pollutants, or

  (ii) if the pollutants are brought on or to the site or location by or for you.

(2) Any loss, cost or expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including asbestos, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste materials. Waste material includes materials which are intended to be or have been recycled, reconditioned, or reclaimed.

The trial court granted the Trust's motion for summary judgment, thus denying coverage to Coon Rapids for any damages it is liable for in *Johnson v. City of Coon Rapids*. Coon Rapids appeals.

## ISSUES

1. Do the injuries alleged in *Johnson v. City of Coon Rapids* stem from separate concurrent causes falling outside the pollution exclusion?

2. Is the pollution exclusion contained in the City of Coon Rapids' liability policy ambiguous?

## ANALYSIS

Summary judgment is appropriate where there are no genuine issues of material fact. *Offerdahl v. University of Minnesota Hospitals and Clinics*, 426 N.W.2d 425, 427 (Minn.1988). On appeal, this court must determine whether the trial court erred in its application of the law. *Id.* As there are no questions of fact, this court need not defer to the trial court's legal

determination. *Frost–Benco Electric Association v. Minnesota Public Utilities Commission*, 358 N.W.2d 639, 642 (Minn. 1984).

Coon Rapids raises two arguments. First, it claims the release of toxic pollution is only one of many proximate causes of the alleged injuries. Therefore, respondent's duty to defend should extend to all causes of action in the complaint. Second, it contends the pollution exclusion is ambiguous and should therefore be construed narrowly in Coon Rapids' favor.

## I. Concurrent Proximate Causes.

■ Coon Rapids argues the injuries claimed resulted not only from the emission of pollutants, but also from their build-up. The build-up was due to the city's alleged failure to maintain the Zamboni machine, adequately ventilate and test the arena, and warn injured parties of health dangers. The city contends only discharge of pollutants, and not the build-up, is excluded from coverage by the policy. Therefore, the Trust owes a duty to defend on all counts of the complaint because

> the duty of an insurer to defend its insured is broader than its duty to pay a judgment rendered against its insured.

*United States Fidelity & Guaranty Co. v. Lewis A. Roser Co.*, 585 F.2d 932, 936 (8th Cir.1978) (citations omitted).

> The Minnesota Supreme Court has held: The obligation to defend is contractual in nature and is determined by the allegations of the complaint and the indemnity coverage of the policy. If any part of a cause of action is arguably within the scope of coverage, the insurer must defend. Any ambiguity is resolved in favor of the insured, and the burden is on the insurer to prove that the claim clearly falls outside the coverage afforded by the policy. If the claim is not clearly outside coverage, the insurer has a duty to defend.

*Prahm v. Rupp Construction Co.*, 277 N.W.2d 389, 390 (Minn.1979) (citations omitted).

The trial court agreed with respondent's contention that the failure to ventilate and failure to test are part of the same risk. In an excellently written and reasoned memorandum, the court states:

> It defies logic to suggest that a chemical compound does not qualify as a pollutant merely because, at some highly diluted level, it does not noticeably irritate the human body. If that were so, there would be very few, if any, chemicals which would qualify as "pollutants."

Likewise, any discharge could, theoretically, be dispersed with adequate ventilation. Under appellant's reasoning the pollution exclusion could never apply in a closed space because the build-up, rather than the emission, causes harm in a closed space.

A similar conclusion is reached in *Healy Tibbitts Construction Co. v. Foremost Insurance Co.*, 482 F.Supp. 830, 836–37 (N.D. Cal.1979). There the court notes that pollutants normally will not cause harm without *some* intervening cause. Under those circumstances, the insured could always contend some intervening factor is a "covered" peril, which would be "tantamount to reading the [pollution exclusion clause] out of the policy altogether." *Id.* at 837.

We agree with the broad reading of a similar pollution exclusion clause in *Guilford Industries, Inc. v. Liberty Mutual Insurance Co.*, 688 F.Supp. 792 (D.Me. 1988). In *Guilford* flood waters caused the eruption of oil pipes which resulted in damage down stream. Plaintiffs contended proximate cause of damages was the flood, not the discharge. The court rejected this reasoning and held the exclusion applied to an entire "area" of coverage:

> The policy language also demonstrates that the exclusion was meant to apply in situations like this. Assuming * * * that floods are covered occurrences, sums which Plaintiff was legally obligated to pay for property damage caused by the flood would be covered *except* if the property damage also arises out of the discharge of pollutants. The exclusion, therefore, carves out a specified area of noncoverage.

*Id.* at 795 (emphasis in the original). In the present case, once the pollutant was intro-

duced into the occurrence, coverage was properly denied.

Additionally, we believe the plain language of the exclusion applies to the build-up situation. Section (1)(d) of the exclusion denies coverage for injuries arising out of the discharge of a pollutant at any site where the city is, or should be:

performing operations:

(i) to test for, monitor, clean up, removal, contain, treat, detoxify, or neutralize the pollutants, or

(ii) if the pollutants are brought on or to the site or location by or for you.

Thus, negligent failure to perform the enumerated operations is specifically excluded from coverage. Further, merely bringing a Zamboni machine on the premises merits exclusion under clause (1)(d)(ii).

II. Ambiguity in the Policy.

 Any ambiguity or reasonable doubt as to the meaning of a term in an insurance policy is to be interpreted in favor of the insured. *Prahm*, 277 N.W.2d at 390.

The test to be used in determining whether there is an ambiguity in an insurance policy is what a reasonable person applying for this type of insurance would have meant the term to mean.

*Amatuzio v. United States Fire Insurance Co.*, 409 N.W.2d 278, 280 (Minn.Ct. App.1987).

Appellant contends the policy's use of the term "arising out of" is not defined in the policy and is therefore ambiguous. *See Covington Township v. Pacific Employers Insurance Co.*, 639 F.Supp. 793, 799–800 (M.D.Pa.1986).

However, under Minnesota law interpretation of the terms of a policy are not exclusively dependent upon definitions contained in the policy. "[T]he terms of an insurance policy are to be given their ordinary meaning, as well as the interpretations adopted in prior cases." *Boedigheimer v. Taylor*, 287 Minn. 323, 327, 178 N.W.2d 610, 613 (1970). The term "arising out of" has been considered by the supreme court in *Associated Independent Dealers, Inc. v. Mutual Service Insurance Co.*, 304 Minn. 179, 229 N.W.2d 516 (1975).

[T]he policy term "arising out of" means "originating from," or "having its origins in," "growing out of," or "flowing from."

*Id.* at 182, 229 N.W.2d at 518 (footnote omitted). This definition of "arising out of" is therefore included in the policy as a matter of law.

We agree with the trial court that the pollution exclusion clause in Coon Rapids' policy is clear and unambiguous. The injury arose out of, originated from, grew out of, and flowed from the release of nitrogen dioxide into arena. The court properly found no genuine issue of material fact and granted summary judgment.

### DECISION

Affirmed.