[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Plaintiff brings this action under C.G.S. § 38a-321 for money allegedly due on an insurance policy issued by defendant to CT Page 12655 the Dudwallen Manufacturing Company (Dudwallen). The complaint alleges that plaintiff suffered property damage as a result of the negligent actions of Dudwallen; that defendant insured Dudwallen for such actions and defendant must pay plaintiff for the damage.
Defendant denies the essential allegations of the complaint and filed 38 special defenses, now reduced to 5. It also filed a counterclaim.
Defendant moves for summary judgment dismissing the compliant.
The parties filed a partial stipulation of facts on or about January 15, 1998. This included an affidavit from one John Romano. The court accepts those stipulations but there are exhibits missing from the stipulations.
The pertinent facts in the partial stipulation are as follows:
 1. CRRA is a public instrumentality and political subdivision of the State of Connecticut. See Sections 22a-261, et seq., of the Connecticut General Statutes.
 3. . . . CRRA operates a refuse-to-energy plant in the Town of Hartford, known as the Mid-Connecticut Resources Recovery Facility (hereinafter "Facility"), where refuse is shredded and burned to produce electricity.
 4. On or about July 20, 1990, Dudwallen Manufacturing Co. (hereinafter "Dudwallen"), also known as Lok Rak Corporation of America, was going out of business, and put out for refuse collection various materials which included a number of packaged boxes containing an epoxy powder coating, known as Farboil, and some boxes of matches. . . .
 5. Dudwallen's said materials were picked up and delivered to the facility by DeFeo Enterprises, Inc. d/b/a Sanitary Waste Disposal Company (hereinafter "Sanitary Waste")
 6. On July 20, 1990 a fire occurred at the Facility and as a result of CRRA incurred costs. [In August 1991,] CT Page 12656 CRRA brought a civil action against Dudwallen, Sanitary Waste, and three officers/directors of Dudwallen in their individual capacities in a case known as Connecticut Resources recovery Authority v. Dudwallen Manufacturing, et al., Docket No. CV-91-0399379S. . . . .
 7. [That] complaint alleged that Dudwallen had disposed of hazardous waste which entered the waste stream and was processed at the Facility.
 8. According to the report of Lt. James Kelley of the Hartford Fire Department, as the epoxy (Farboil) was being shredded on a conveyor system at the Facility, it caused a fire/explosion that damaged the Facility.
 9. The Facility had to be shut down, and refuse had to be diverted to another refuse-to-energy facility and for disposal at the Hartford landfill. [That] complaint also alleged that while the Facility was being repaired, the plaintiff also had to burn coal to produce electricity, resulting in additional costs and lost revenue.
 10. The damage requested by CRRA in its original lawsuit against Dudwallen included: 1) $41,258.00 in clean-up costs and repairs; 2) $29,425.00 for diversion of refuse to another plant; 3) losses of $72,075.00 from having to use landfill space for additional refuse; and 4) $60,821.00 additional costs of purchased coal and lost revenue associated with energy production.
 11. According to the report of Lt. P. Ryan of the Hartford Fire Department, a sprinkler pipe used on the conveyor was broken at a fitting which made the sprinkler head on the conveyor in that area ineffective.
 12. The Connecticut Department of Environmental Protection also inspected the Facility after the fire and determined that the material disposed by Dudwallen was a hazardous waste, and ordered that a licensed waste hauler remove the remaining material.
 13. CRRA has advised that it did not receive any formal notices of violations from the Connecticut Department CT Page 12657 of Environmental Protection or any other federal or state environmental agency for contamination of the environment.
 14. The Facility was back to full operation approximately one and one-half days after the fire/explosion.
 15. CRRA entered into a Settlement Agreement with Sanitary Waste, attached hereto and incorporated . . .
 16. CRRA withdrew its claim against the individual officers/directors of Dudwallen, and entered into a stipulated judgment of $130,000 [against Dudwallen] . . .
 17. CNA [had] issued a commercial general liability insurance policy to Dudwallen for the period from 10/1/89 to 10/1/90 . . . This policy contained the absolute pollution exclusion, which states:
 Exclusions.
This insurance does not apply to:
 (f) (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:
1. At or from premises you own, rent or occupy;
 2. At or from any site or location used by or for you or others for the handling, storage, disposal, processing or treatment of waste;
 3. Which are at any time transported, handled, stored, treated, disposed of or processed as waste by or for you or any other person or organization for whom you may be legally responsible; or
 4. At or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are CT Page 12658 performing operations;
 (i) if the pollutants are brought on or to the site or location in connection with such operations
or
 (ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.
 (2) Any loss, cost or expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.
 Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.
 18. CRRA and CNA herein stipulate that the fire/explosion occurred within the policy period and the coverage territory of the policy in issue.
 19. CRRA and CNA herein stipulate that the damage caused by fire and the resultant loss of use of that property is within the policy's definition of "property damage."
 20. CNA has no challenge to the reasonableness of the settlement between CRRA and Dudwallen.
 21. Shortly after Dudwallen was served with the lawsuit, referred to in Stipulation of Fact No. 6, Dudwallen proffered a claim to CNA. CNA, by letter dated October 17, 1991, denied coverage for defense and indemnity based on the absolute pollution exclusion in the policy and expressly reserved any other rights it had under the policy. . . .
 22. CRRA initiated this action pursuant to Section 38a-321
of the Connecticut General Statutes after the Judgment CT Page 12659 against Dudwallen, referred to in the Proposed Stipulation of fact No. 14, remained unsatisfied for more than thirty (30) days.
 23. CRRA and CNA herein stipulate that the insurance limits of the Policy are sufficient to satisfy the $130,00 stipulated judgment, if CRRA prevails in this lawsuit.
Further, the parties to this Stipulation of Fact recognize that there are other facts which have not been stipulated to and which will be determined by the Court.
The plaintiff mentioned in its brief that matches were also given to the waste transporter and were delivered to the facility. Plaintiff is suing on the judgment it received in its case against Dudwallen (supra). The complaint in that case complains in various forms of improper disposal of hazardous waste. Number 7 of the stipulation confirms that.
The policy covered Dudwallen for liability for property damage but excluded liability "arising out of the actual, alleged or threatened discharge, disposal, release or escape of pollutants . . . (c) which are at any time transported, handled . . . disposed of, or processed as waste by or for Dudwallen." The material given the transporter was all waste. Was the giving of the hazardous waste a discharge of pollutants or did such discharge only occur at the time of the accident in plaintiff's facility? It was a discharge.
The liability for property damage insured against under this policy must be "caused by an occurrence". Westchester Fire Ins.CO. v. City of Pittsburgh, Kan., 768 F. Sup. 1463. Is our occurrence the explosion at the facility or putting the Farboil and matches in the waste transporters' vehicle? Does the damage have to follow immediately from the occurrence? As theWestchester case says the policy is for protection "against liability for unintentional and unexpected . . . damage arising out of the insured's business."
It is clear that, however the occurrence happened, it arose out of Dudwallen's business.
The occurrence of the explosion was certainly, on the evidence before the court, unintentional and unexpected. The CT Page 12660 occurrence of the placing the Farboil and matches in the stream for waste disposal would appear to be intentional but the resultant damages appear to be both unintentional and unexpected.
The defendant gives proof that the liability insurance policy here sued upon contains an "Absolute Pollution Exclusion" clause (the Clause) that exempts it from any liability under the policy.
Under the Clause a pollutant is "any . . . contaminant including . . . chemicals and waste." The definition of contaminant "encompasses regulated waste." 24 Leggett Street Ltd.Partnership v. Beacon Industries, Inc., 239 Conn. 284, 298. The waste that caused the damages here was a regulated waste.
The burden of proving the effect of the exclusion in its contract is on defendant. O'Brien v. John Hancock Mutual LifeIns. Co., 143 Conn. 25.
As plaintiff correctly points out if there is any ambiguity in the clause in question the construction most favorable to the insured will be adopted Schultz v. Hartford Fire Ins. Co.,213 Conn. 696.
The question is not whether the damages claimed were the result of contamination nor is the question under the clause whether the waste caused contamination to the air, soil or water of Connecticut even though our Connecticut laws were adopted "to control, air, land and water pollution." C.G.S. § 22a-1. Damages need only arise out of the discharge. Francis HardwoodLumber v. Bituminous Cas., 378 2d 407, 409; League of Minn.CitiesInsurance v. Coon Rapids, 446 N.W.2d 419. Dudwallen polluted and contaminated when it gave the waste to the transporter. That transporter aided the discharge, dispensing and release of the pollutants but whether any got into the environment is not determinable from the information before the court. However, it need not be proven under the clause.
As plaintiff says the entire event took only 36 hours. We do not know where the pollutants were during that period.
When a hazardous waste explodes it could be inferred that at least some of it entered our environment. But in this motion for summary judgment the court does not believe use of such an inference is appropriate. CT Page 12661
The pollutant here "exploded" and caused a fire. Does the fact that a pollutant exploded rather than "just" polluted the air, water or soil of Connecticut render it not a pollutant? The facts as proven by the Partial Stipulation, and the Romano affidavit support that there may have been no contamination resulting from the explosion of the Farboil. At this point we have no uncontested evidence that there was any pollution resulting from the explosion.
Under the Policy "Pollutants means any solid, liquid, gaseous or thermal irritant or contaminants . . .". Farboil, the pollutant here, was certainly a pollutant at the Dudwallen factory, in the vehicle which conveyed it to the CRRA facility and at that facility prior to the explosion.
We do not, have a statute which tells us exactly for each pollutant how it will pollute. The stipulation does specifically state as a fact that the Farboil was a hazardous waste.[1]
I believe that the parties should have an opportunity to bring these issues before a fact finder with other facts, if any, and to explain and argue the interpretation in footnote 1.
The possible issue of collection of any damages from a joint tortfeasor was not presented to the court and therefore the court makes no finding or ruling in that regard. In plaintiffs' case against Dudwallen, supra there were other defendants. Plaintiff "entered into a Settlement Agreement with Sanitary Waste (Sanitary)" one of the defendants in that suit. That agreement is stated to be attached but is not found. We do not know if Sanitary was a joint tortfeasor in that case but if so whatever plaintiff received from Sanitary would be deducted from plaintiff's recovery, if any, from defendant here. See Gionfriddo v. Gartenhaus Cafe, 15 Conn. App. 392, 406.
The court being of a hesitant mind finds that defendant has not sustained its burden and therefore denies the motion.