[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF LAW
Plaintiff brings this action under C.G.S. § 38a-321 for money allegedly due on an insurance policy issued by defendant to the Dudwallen Manufacturing Company (Dudwallen). The complaint alleges that plaintiff suffered property damage as a result of CT Page 222 the negligent actions of Dudwallen; that defendant insured Dudwallen for such actions and defendant must pay plaintiff for the damage.
Defendant denied the essential allegations of the complaint, filed 38 special defenses and filed a counterclaim.
The parties filed a partial stipulation of facts on or about January 15, 1998 and another on December 21, 1998. These included an affidavit from one John Romano. The court accepts these stipulations.
The pertinent facts in the two partial stipulations are as follows:
 1. CRRA is a public instrumentality and political subdivision of the State of Connecticut. See Sections 22a-261, et seq., of the Connecticut General Statutes.
 3. . . . CRRA operates a refuse-to-energy plant in the Town of Hartford, known as the Mid-Connecticut Resources Recovery Facility (hereinafter "Facility"), where refuse is shredded and burned to produce electricity.
 4. On or about July 20, 1990, Dudwallen Manufacturing Co. (hereinafter "Dudwallen"), also known as Lok Rak Corporation of America, was going out of business, and put out for refuse collection various materials which included a number of packaged boxes containing an epoxy powder coating, known as Farboil, and some boxes of matches . . .
 5. Dudwallen's said materials were picked up and delivered to the Facility by DeFeo Enterprises, Inc. d/b/a Sanitary Waste Disposal Company (hereinafter "Sanitary Waste").
 6. On July 20, 1990 a fire occurred at the Facility and as a result of CRRA incurred costs. [In August 1991,] CRRA brought a civil action against Dudwallen, Sanitary Waste, and three officers/directors of Dudwallen in their individual capacities in a case known as Connecticut Resources Recovery Authority v. Dudwallen Manufacturing, et al., Docket No. CV-91-0399379S . . .[Dudwallen Case].
7. [That] complaint alleged that Dudwallen has disposed of
CT Page 223
 hazardous waste which entered the waste stream and was processed at the Facility.
 8. According to the report of Lt. James Kelley of the Hartford Fire Department, as the epoxy (Farboil) was being shredded on a conveyor system at the Facility, it caused a fire/explosion that damaged the Facility.
 9. The Facility had to be shut down, and refuse had to be diverted to another refuse-to-energy facility and for disposal at the Hartford landfill. [That] complaint also alleged that while the Facility was being repaired, the plaintiff also had to burn coal to produce electricity, resulting in additional costs and lost revenue.
 10. The damages requested by CRRA in its original lawsuit against Dudwallen included: 1) $41,258.00 in clean-up costs and repairs; 2) $29,425.00 for diversion of refuse to another plant; 3) losses of $72,075.00 from having to use landfill space for additional refuse; and 4) $60,821.00 additional costs of purchased coal and lost revenue associated with energy production.
 11. According to the report of Lt. P. Ryan of the Hartford Fire Department, a sprinkler pipe used on the conveyor was broken at a fitting which made the sprinkler head on the conveyor in that area ineffective.
 12. The Connecticut Department of Environmental Protection also inspected the Facility after the fire and determined that the material disposed by Dudwallen was a hazardous waste, and ordered that a licensed waste hauler remove the remaining material.
 13. CRRA has advised that it did not receive any formal notices of violations from the Connecticut Department of Environmental Protection or any other federal or state environmental agency for contamination of the environment.
 14. The Facility was back to full operation approximately one and one-half days after the fire/explosion.
 15. CRRA entered into a Settlement Agreement with Sanitary Waste, attached hereto and incorporated . . .
CT Page 224
 16. CRRA withdrew its claim against the individual officers/directors of Dudwallen, and entered into a stipulated judgment for $130,000 [against Dudwallen] . . .
 17. CNA [had] issued a commercial general liability insurance policy to Dudwallen for the period from 10/1/89 to 10/1/90 . . . This policy contained the absolute pollution exclusion, which states:
 Exclusions.
This insurance does not apply to:
 (f)(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:
(a) At or from premises you own, rent or occupy;
 (b) At or from any site or location used by or for you or others for the handling, storage, disposal, processing or treatment of waste;
 (c) Which are at any time transported, handled, stored, treated, disposed of or processed as waste by or for you or any other person or organization for whom you may be legally responsible; or
 (d) At or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations;
 (i) if the pollutants are brought on or to the site or location in connection with such operations; or
 (ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.
(2) Any loss, cost or expense arising out of any
CT Page 225
 governmental direction or request that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.
 Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.
 18. CRRA and CNA herein stipulate that the fire/explosion occurred within the policy period and the coverage territory of the policy in issue.
 19. CRRA and CNA herein stipulate that the damage caused by fire and the resultant loss of use of that property is within the policy's definition of "property damage."
 20. CNA has no challenge to the reasonableness of the settlement between CRRA and Dudwallen.
 21. Shortly after Dudwallen was served with the lawsuit, referred to in Stipulation of Fact No. 6, Dudwallen proffered a claim to CNA. CNA, by letter dated October 17, 1991, denied coverage for defense and indemnity based on the absolute pollution exclusion in the policy and expressly reserved any other rights it had under the policy . . .
 22. CRRA initiated this action pursuant to Section 38a-321
of the Connecticut General Statutes after the Judgment against Dudwallen, referred to in the Proposed Stipulation of fact No. 14, remained unsatisfied for more than thirty (30) days.
 23. CRRA and CNA herein stipulate that the insurance limits of the Policy are sufficient to satisfy the $130,00 stipulated judgment, if CRRA prevails in this lawsuit.
Further, the parties to this Stipulation of Fact recognize that there are other facts which have not been stipulated to and which will be determined by the Court.
Plaintiff is suing on the judgment it received in its case against Dudwallen (supra). The complaint in that case complains CT Page 226 in various forms of improper disposal of hazardous waste. Number 7 of the stipulation confirms that.
The policy covered Dudwallen for liability for property damage but excluded liability "arising out of the actual, alleged or threatened discharge, disposal, release or escape of pollutants . . . (c) which are at any time transported, handled . . . disposed of, or processed as waste by or for Dudwallen." The epoxy material given the transporter was hazardous all waste. Under C.G.S § 22a-115(1) "`hazardous waste'" means any waste material . . . which may pose a present or potential hazard to human health or the environment when improperly disposed of, stored, transported or otherwise managed . . .". Disposal "means the incineration, long-term storage, or treatment of hazardous waste into or on land or water so that such hazardous waste or any hazardous constituent of such hazardous waste enters the environment, is emitted into the air . . ." Id. § 22a-115(3). The giving of the hazardous waste was a discharge and disposal of pollutants at that time.
The pollutant here "exploded" and caused a fire. The facts as proven by the Partial Stipulation, and the Romano affidavit do not prove that there was no contamination resulting from the explosion of the Farboil.
When this hazardous waste exploded in the resultant release of burned materials at least some entered our environment.
Under the Policy "Pollutants means any solid, liquid, gaseous or thermal irritant or contaminants . . ." Farboil, the pollutant here, was certainly a pollutant at the Dudwallen factory, in the vehicle which conveyed it to the CRRA facility and at that facility prior to the explosion.
We do not have a statute which tells us exactly for each pollutant how it will pollute. The stipulation does specifically state as a fact that the Farboil was a hazardous waste.
The liability for property damage insured against under this policy must be "caused by an occurrence". Westchester FireIns. Co. v. City of Pittsburgh, Kan., 768 F. Sup. 1463. Our occurrence was putting the Farboil and matches in the waste transporters' vehicle. The damages need not follow immediately from the occurrence. As the Westchester case says the insurance policy is for protection "against liability for unintentional and CT Page 227 unexpected . . . damage arising out of the insured's business."
It is clear that, however the occurrence happened, it arose out of Dudwallen's business.
The occurrence of the explosion was certainly, on the evidence before the court, unintentional and unexpected. The occurrence of the placing the Farboil and matches in the stream for waste disposal was intentional but the resultant damages were both unintentional and unexpected.
The defendant gives proof that the liability insurance policy here sued upon contains an "Absolute Pollution Exclusion" clause (the Clause) that exempts it from any liability under the policy.
Under the Clause a pollutant is "any . . . contaminant including . . . chemicals and waste." The definition of contaminant "encompasses regulated waste." 24 Leggett Street Ltd.Partnership v. Beacon Industries, Inc., 239 Conn. 284, 298. The waste that caused the damages here was a regulated waste.
The burden of proving the effect of the exclusion in its contract is on defendant. O'Brien v. John Hancock Mutual LifeIns. Co., 143 Conn. 25. As plaintiff correctly points out if there is any ambiguity in the clause in question the construction most favorable to the insured will be adopted. Schultz v. HartfordFire Ins. Co., 213 Conn. 696.
The question is not whether the damages claimed were the result of contamination nor is the question under the clause whether the waste caused contamination to the air, soil or water of Connecticut even though our Connecticut laws were adopted "to control, air, land and water pollution." C.G.S. § 22a-1. Damages need only arise out of the discharge. Francis HardwoodLumber v. Bituminous Cas., 378 S.E.2d 407, 409; League ofMinn. Cities Insurance v. Coon Rapids, 446 N.W.2d 419. Dudwallen polluted and contaminated when it gave the waste to the transporter. That transporter aided the discharge, dispensing and release of the pollutants. There is no direct evidence as to whether any got into the environment. However, it need not be proven under the Clause. In addition, the court has taken notice of the Dudwallen case in this court.
"There is no question, however, as to the court's power, in CT Page 228 a proper case to take judicial notice of the file in the same court whether or not between the same parties." Guerriero v.Salasso, 144 Conn. 600, 605. The Dudwallen Case was referred to in the partial stipulation. In addition that stipulation specifically states that other facts "will be determined by the Court." See Farm Bureau Mut. Automobile Ins. Co. v. Kohn Bros.Tobacco Co., 141 Conn. 539, 541.
In the interpretation of a contract the intent of the parties is to be determined. In our situation Dudwallen stated in its disclosure of the insurance in the Dudwallen Case "that no insurance existed in connection with the incident of July 20, 1990." That could easily be interpreted to mean Dudwallen believed there was no coverage under the defendants' insurance policy for this incident and the court so interprets it. Of course, it might be interpreted to simply mean no coverage existed because CNA refused coverage. However the court does not interpret it in the latter way because of its own language and because about one year later that case was finalized by a judgment by stipulation of Dudwallen admitting that it was liable for the full amount of that judgment. Having no insurance coverage, it is plain that Dudwallen did not expect any money from the defendant here. The defendant takes the same factual position and thus the court finds that there is no dispute as to the coverage and the interpretation of the exclusion.
Judgment for the defendant.
N. O'Neill, J.