# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3594

_____

| | |
|---|---|
| Continental Casualty Company; Transportation Insurance Company, | * <br> * <br> * |
| Appellees, | * |
| v. | *   Appeal from the United States <br> *   District Court for the <br> *   District of Minnesota. |
| Advance Terrazzo & Tile Company, Inc.; James M. Fanjoy; Nancy L. Fanjoy, | * <br> * <br> * <br> * |
| Appellants. | * |

_____

Submitted: May 19, 2006
Filed: August 30, 2006

_____

Before SMITH, HANSEN, and COLLOTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Advance Terrazzo and Tile Company, Inc. ("Advance Terrazzo") and James and Nancy Fanjoy ("the Fanjoys") appeal the district court's[1] declaratory judgment in favor of insurance companies Continental Casualty Company and Transportation Insurance Company ("insurance companies"). The Fanjoys sued Advance Terrazzo

_____

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

and others after James Fanjoy was allegedly exposed to an excessive amount of carbon monoxide gas released from Advance Terrazzo's propane-powered grinders, causing him to fall and injure his back at a construction site. The district court found that the insurance companies had no duty to defend Advance Terrazzo in a lawsuit brought by the Fanjoys based upon the "absolute" pollution exclusion contained in the insurance policies. We affirm.

## I. *Facts*

In March 1999, Advance Terrazzo, as subcontractor for Gopher State Contractors, Inc. ("Gopher State"), installed terrazzo flooring in the hallways of a school building for the Foley Independent School District in Foley, Minnesota. Advance Terrazzo used its own propane-powered terrazzo floor grinders, which emit carbon monoxide as a gaseous exhaust byproduct. James Fanjoy, an independent contractor for a painting subcontractor, was working on drywall at the construction site. According to Fanjoy, carbon monoxide emitted from Advance Terrazzo's propane-powered grinders caused him to fall and sustain injuries that have left him physically and mentally impaired.

On January 21, 2002, Fanjoy and his wife sued Advance Terrazzo, Gopher State, and Fanjoy's employer in state court. The complaint alleges that Advance Terrazzo was negligent in failing to provide proper ventilation when operating its floor grinders and failed in its duty to properly monitor the work environment for carbon monoxide gas. Advance Terrazzo's insurance companies[2] began defending Advance Terrazzo in the state lawsuit. However, the insurance companies later filed the instant declaratory judgment action in federal court, contending that the absolute

---

[2]Transportation Insurance Company issued to Advance Terrazzo a commercial general liability policy with limits of $1,000,000 for the period of February 28, 1999 through February 28, 2000. In addition to primary coverage, Continental Casualty Company insured Advance Terrazzo under a commercial umbrella policy for up to $4,000,000 for the same period.

pollution exclusion[3] bars coverage under the general liability policy issued to Advance Terrazzo.

The general liability policy provided coverage for claims based upon bodily injury or property damage, but the policy specifically excludes coverage for bodily injury or property damage caused by pollution in what is referred to as the absolute pollution exclusion:

> f. Pollution
>
> (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:
>
> > (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:
> >
> > > (i) If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor . . .

Pollution is defined under the policy as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." *Id*. at 432.

---

[3]"The exclusions at issue are known as 'absolute pollution exclusions' to differentiate them from the earlier widely used pollution exclusions that limited the definition of pollutants to those that contaminated the 'land, atmosphere, or any water course or body of water,' and did not apply if the contamination was 'sudden and accidental.'" *Auto-Owners Ins. Co. v. Hanson*, 588 N.W.2d 777, 778 n.1 (Minn. Ct. App. 1999).

Advance Terrazzo moved to dismiss the declaratory judgment complaint or, in the alternative, to stay the action based on the abstention doctrine, claiming that there is no Minnesota Supreme Court decision governing this case. The district court denied the motion, resolving the coverage issues based upon existing Minnesota case law. The insurance companies then filed for summary judgment to determine whether the policies at issue apply to the underlying state lawsuit. The district court granted the insurance companies' motion for summary judgment, finding that the insurance companies' absolute pollution exclusion barred coverage of the Fanjoys' claims against Advance Terrazzo under Minnesota law. Advance Terrazzo and the Fanjoys appeal.

## II. *Discussion*

Advance Terrazzo submits three arguments on appeal. First, Advance Terrazzo requests that this court certify the legal question presented in this case to the Minnesota Supreme Court or, in the alternative, abstain from reaching a decision. Second, Advance Terrazzo argues that the absolute pollution exclusion contained in the general liability insurance policy is ambiguous and should not apply to ordinary business activities. Therefore, the policy should provide coverage to Advance Terrazzo for the Fanjoys' claims. Third, Advance Terrazzo avers that coverage should be found for other reasons, including (1) the "brought on"[4] and "heater"[5] exceptions to the absolute pollution exclusion provision and (2) estoppel. We will address each claim in turn.

---

[4]The pollution exclusion applies "if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor . . . ."

[5]The "heater" exception to the absolute pollution exclusion provides coverage for bodily injury if the injury is "sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building."

A. *Certification to the Minnesota Supreme Court*

Both parties agree that Minnesota law governs this declaratory judgment action. Advance Terrazzo states that the Minnesota Supreme Court has not interpreted the absolute pollution exclusion, and thus, this court would have to predict how the Minnesota Supreme Court would resolve the issue. Additionally, the appellants claim that the Minnesota Court of Appeals' decisions are inadequate and improper precedent for interpreting the absolute pollution exclusion in the context of carbon monoxide emitted from ordinary business activities. Therefore, Advance Terrazzo asserts that the district court erred in denying its motion to certify and requests that this court certify to the Minnesota Supreme Court the question of whether the absolute pollution exclusion bars coverage for carbon monoxide emitted during ordinary business activities.

We hold that the district court did not abuse its discretion in denying the appellants' motion to certify this question to the Minnesota Supreme Court. In an order dated December 14, 2005, we addressed the certification issue stating, "Appellants' motion to certify a question of law to the Minnesota Supreme Court has been considered by the court and is denied." The argument has gained no additional merit in the interim, and we again decline appellants' request to certify this question to the Minnesota Supreme Court. The Minnesota Court of Appeals decisions are consistent and long-standing precedent. They provide adequate guidance as to the current state of Minnesota law.

B. *Abstention*

The appellants contend that the district court should not have exercised jurisdiction during the pendency of parallel state court proceedings. Alternatively, if this court finds that no parallel state court proceedings exist, the appellants claim that the district court should have exercised its discretion to stay or dismiss the action because, under the *Detco* factors, abstention is warranted. *Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 998 (8th Cir. 2005). The appellants argue, first, that state

courts should clarify and settle the legal questions at issue rather than federal courts. Second, the state has an interest in resolving the unsettled question of Minnesota law on the absolute pollution exclusion, as well as deciding the factual question on the source of carbon monoxide in the pending state action. Third, the federal court, by abstaining, would allow the state court system to address the legal issues and clarify its legal precedent. For these reasons, *inter alia*, the appellants maintain that the district court abused its discretion in not staying or dismissing this action.

"We review for abuse of discretion a decision to stay or dismiss a declaratory judgment." *Id*. at 996. The court reviews de novo whether parallel proceedings were pending in state court at the time the insurance companies brought the declaratory judgment action. *Id*."Generally, a federal district court must exercise its jurisdiction over a claim unless there are 'exceptional circumstances' for not doing so." *Id*.

A threshold issue is whether parallel proceedings in state court were pending when the appellees brought this declaratory judgment action. *Id*. "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Id*. (internal quotation omitted). In *Detco*, we held that there were no parallel proceedings pending in state court because (1) the insurer was not a party to the suit pending in state court; and (2) the state court actions involved issues regarding the insured's liability, whereas the federal suit involved matters of insurance coverage. *Id*. at 997. The same is true of this case. The underlying state court action is between Advance Terrazzo and the Fanjoys; the insurance companies are not named parties in that action. Moreover, the state court action deals with Advance Terrazzo's liability for the Fanjoys' injuries, but the declaratory judgment action deals with whether or not the insurance companies must provide coverage to Advance Terrazzo under the policies. We conclude, therefore, that the suits are not parallel, "for the state court proceedings involve parties, arguments, and issues different from those in the federal court proceedings." *Id*.

Next, we address whether abstention by the district court would be appropriate in a declaratory judgment action in which there are no parallel state court proceedings. *Id*. We consider at least six factors in answering this question:

> (1) whether the declaratory judgment sought will serve a useful purpose in clarifying and settling the legal relations in issue; (2) whether the declaratory judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the federal proceeding; (3) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in state courts; (4) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action in pending; (5) whether permitting the federal action to go forward would result in unnecessary entanglement between the federal and state court systems, because of the presence of overlapping issues of fact or law; and (6) whether the declaratory judgment action is being used merely as a device for procedural fencing – that is, to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable.

*Id*. at 998 (citing *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998)) (internal brackets and quotations omitted).

The first and second factors do not favor abstaining from this declaratory judgment action. The declaratory judgment sought will clarify and settle the legal relations at issue, namely whether or not Advance Terrazzo is entitled to coverage under the insurance policies. The declaratory judgment will also terminate and afford relief from the "uncertainty, insecurity, and controversy" of whether or not Advance Terrazzo is entitled to coverage under the insurance policies. Considering factor three, we acknowledge the state's interest in interpreting the "absolute" pollution exclusion, but considering the state's existing precedent, we do not see that interest as strong. As to factors four and five, the state court cannot resolve the legal issue of coverage any more efficiently than the federal court nor does federal action unnecessarily entangle

-7-

the two court systems. Notably, the parties elected to stay the action in state court so that the federal declaratory judgment action could take place. Lastly, we discern no improper procedural maneuvering by the insurance companies. The action seeks only a determination of whether Advance Terrazzo is entitled to coverage under the policies' absolute pollution exclusion. In sum, we find that the district court did not abuse its discretion in deciding not to abstain from this action.

## C. *Application of the Absolute Pollution Exclusion*

Advance Terrazzo argues that the absolute pollution exclusion is ambiguous when applied to routine business hazards such as the release of carbon monoxide from terrazzo grinders. Advance Terrazzo contends that the exclusion is susceptible to more than one reasonable interpretation and notes that most other state courts addressing the question have found that the absolute pollution exclusion is ambiguous. Additionally, Advance Terrazzo asserts that the historical purpose of the pollution exclusion supports limiting the clause to traditional environmental contamination. Advance Terrazzo also believes that the insurance companies' own conduct shows that they intended to cover Advance Terrazzo's floor-grinding business activities.

"We review de novo a grant of summary judgment, considering the facts in the light most favorable to the nonmoving party. Summary judgment is proper when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law." *Nat'l Am. Ins. Co. v. W & G, Inc.*, 439 F.3d 943, 945 (8th Cir. 2006) (internal citation omitted). "In insurance coverage actions involving diversity of citizenship, state law controls our analysis of the insurance policy." *Id.*

Decisions from the state supreme court as to state law are binding on this court. *Garnac Grain Co., Inc. v. Blackley*, 932 F.2d 1563, 1570 (8th Cir. 1991). "Decisions of the various intermediate appellate courts are not, but they are persuasive authority, and we must follow them when they are the best evidence of what [the state] law is." *Id.* When a state's highest court has not decided an issue, it is up to this court to predict

how the state's highest court would resolve that issue. *Sloan v. Motorists Mut. Ins. Co.*, 368 F.3d 853, 856 (8th Cir. 2004) (citing *Jackson v. Anchor Packing Co.*, 994 F.2d 1295, 1301 (8th Cir. 1993)).

Minnesota courts interpret insurance policies according to their plain meaning. *Auto-Owners Ins. Co. v. Hanson*, 588 N.W.2d 777, 779 (Minn. Ct. App. 1999). Although the Minnesota Supreme Court has not interpreted an "absolute" pollution exclusion under an insurance policy, it has interpreted a "qualified" pollution exclusion in *Bd. of Regents of the Univ. of Minn. v. Royal Ins. Co. of Am.*, 517 N.W.2d 888 (Minn. 1994). In that case, the Supreme Court applied a "non-technical, plain meaning approach to interpreting a pollution exclusion . . . ." *Auto-Owners*, 588 N.W.2d at 779.

However, the Minnesota Court of Appeals has had occasion to interpret "absolute" pollution exclusions in some policies. In those cases, the court of appeals has consistently held that the absolute pollution exclusion is unambiguous and applies to pollutants occurring in the normal course of business activities, including indoor pollution. *Auto-Owners*, 588 N.W.2d at 777; *City of Maple Lake v. Am. States Ins. Co.*, 509 N.W.2d 399 (Minn. Ct. App. 1993); *League of Minn. Cities Ins. Trust v. City of Coon Rapids*, 446 N.W.2d 419 (Minn. Ct. App. 1989).

In *Auto-Owners*, the appellant suffered severe health problems as a result of the ingestion and absorption of lead in paint chips at a rental property. 588 N.W.2d at 778. The Minnesota Court of Appeals held that "[b]odily injury caused by ingestion of lead from paint applied in a residence falls within the policies' so-called 'absolute pollution exclusions.'" *Id.* at 782. The court followed the test outlined in *Royal* and applied a non-technical, plain-meaning approach in interpreting the pollution exclusion.[6] *Id.* at

---

[6]The insurance policy at issue in *Auto-Owners* "contained an exclusion for injuries and damage resulting from 'discharge, release, escape, seepage, migration or dispersal of pollutants' 'at or from any premises' owned by an insured. The policy

779. "Applying an ordinary meaning approach to the pollution exclusion also coincides with Minnesota's general rule for insurance policy interpretation." *Id*. In applying that approach, the court concluded that lead in paint fell within the policy's definition of a "pollutant." *Id*. The court further explained that "[t]his contradicts a line of cases in other states that find either (1) the exclusion unambiguously does not include lead paint in a home, or (2) the language is ambiguous and therefore the exclusion does not apply. These cases are premised on a technical rather than an ordinary reading of the exclusion, ascribing to the reader a knowledge of 'terms of art' in environmental law and thus are inconsistent with *Royal* and inapplicable to Minnesota cases." *Id*.

In *City of Maple Lake*, property owners sued the city in an inverse condemnation action because its wastewater treatment plant discharged effluent into Mud Lake, which was adjacent to their property. 509 N.W.2d at 401–02. The city argued that its reasonable expectations should override the terms of the absolute pollution exclusions,[7] but the Minnesota Court of Appeals rejected this argument. *Id*. at 406. The court stated that the insurer's absolute pollution exclusion was not ambiguous and precluded coverage for the claims against the city because the wastewater treatment plant effluent released into the lake was a "pollutant" under the policy. *Id*. at 404–06.

---

defined pollutant as 'any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, liquids, gases and waste." 588 N.W.2d at 778.

[7]The insurance policy at issue in *City of Maple Lake* contained an absolute pollution exclusion, which precluded coverage for "property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water." 509 N.W.2d at 402.

Lastly, in *City of Coon Rapids*, a number of individuals suffered lung injuries while inside an ice arena owned by the City of Coon Rapids, Minnesota. 446 N.W.2d at 420. "The injuries [] occurred when levels of nitrogen dioxide, a toxic by-product of a Zamboni ice cleaning machine, built up in the arena." *Id*. The Minnesota Court of Appeals held that the absolute pollution exclusion in the insurance policy was clear and unambiguous, and the exclusion applied because "[t]he injury arose out of, originated from, grew out of, and flowed from the release of nitrogen dioxide into the arena." *Id*. at 422. Further, the court held that "merely bringing a Zamboni machine on the premises merits exclusion under [the policy]." *Id*. Both the instant case and *City of Coon Rapids* have a "brought on" provision within the absolute pollution exclusion.

Applying the Minnesota precedents to the instant case, we conclude that there is no ambiguity in the policy language. Carbon monoxide is an "irritant" under *Royal* and the subsequent court of appeals' decisions. Here, the carbon monoxide was caused by Advance Terrazzo's grinders and "dispersed" throughout the work site. Therefore, the absolute pollution exclusion applies to deny coverage. The policy excludes coverage for bodily injury arising out of the dispersal, release, or escape of pollutants. Carbon monoxide, a "pollutant," was released as a byproduct of Advance Terrazzo's terrazzo grinders. In addition, the pollutant was "brought on" to the premises by Advance Terrazzo when it brought its terrazzo grinders to the work site. Minnesota considers carbon monoxide an irritant and health hazard because of its "irritant effects on the human body." *Royal*, 517 N.W.2d at 892.

Factually, this case is very similar to *City of Coon Rapids*. There is no discernible distinction between the release of nitrogen dioxide by a Zamboni machine and the release of carbon monoxide from a terrazzo grinder. The Minnesota Court of Appeals has consistently held that the absolute pollution exclusion is unambiguous and applies to the "dispersal" or "release" of "pollutants" that are found in the ordinary course of business, i.e. from running an ice cleaning machine or releasing effluent from a wastewater treatment plant. There are no facts in this case that would lead to

-11-

a contrary result. In short, applying Minnesota law, we are persuaded by the consistent holdings of the Minnesota Court of Appeals that, under Minnesota law, the absolute pollution exclusion precludes Advance Terrazzo from coverage under the insurance policies for the Fanjoys' claims.

Advance Terrazzo raises three additional arguments, which we address briefly. First, Advance Terrazzo argues that it should be entitled to coverage under the "brought on" provision of the policy because Advance Terrazzo did not bring carbon monoxide to the construction site. Instead, it brought on LP gas, which is not a pollutant. This argument fails because Advance Terrazzo brought on to the premises the terrazzo grinders and the fuel to run them. The terrazzo grinders' exhaust produced the build-up of carbon monoxide, which later injured James Fanjoy. Because Advance Terrazzo brought on to the premises the machine that produced the carbon monoxide, it falls squarely into the policy language triggering the absolute pollution exclusion. *See City of Coon Rapids*, 446 N.W.2d at 419.

Second, Advance Terrazzo argues that the "heater exception" should apply, stating that the source of the carbon monoxide could have been the general contractor's torpedo heaters. However, Advance Terrazzo does not own or operate the torpedo heaters in question. The pollution exclusion in paragraph (f)(1)(a)[8] applies

---

[8]Paragraph (f)(1)(a), as modified by the Amendment for Pollution Exclusion—Exception for Building Heating Equipment, reads as follows:

This insurance does not apply to:

f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

only to equipment used in a building owned or rented by Advance Terrazzo, and the heating exception applies only to the exclusion in paragraph (f)(1)(a). The insurance companies do not rely on (f)(1)(a)—they rely on (f)(1)(d), so the heating exception to the exclusion in paragraph (f)(1)(a) would afford Advance Terrazzo no relief, even if applicable.

Finally, the appellants submit that estoppel should apply to bar the insurance companies from denying coverage because Advance Terrazzo suffered prejudice in relying on coverage. However, the Minnesota Supreme Court "held that estoppel cannot be used to expand or create insurance coverage where it does not exist." *Minn. Commercial Ry. Co. v. Gen. Star Indem. Co.*, 408 F.3d 1061, 1063 (8th Cir. 2005) (quoting *Shannon v. Great Am. Ins. Co.*, 276 N.W.2d 77, 78 (Minn. 1979)). In *Shannon*, the supreme court stated that "it would be wholly improper to impose coverage liability upon an insurer for a risk not specifically undertaken and for which no consideration has been paid." *Id.* (quoting *Shannon*, 276 N.W.2d at 78) (internal quotations omitted). Here, *Shannon* precludes this court from applying estoppel to the appellants' situation because Advance Terrazzo is not entitled to coverage under the policy.

## III. *Conclusion*

For the reasons stated above, the judgment of the district court is affirmed in all respects.

_____

_____

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

However, Subparagraph (a) does not apply to "bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building.