William Barton DAVIS and John Newmerzhycky, Plaintiffs,

v.

Iowa State Trooper Justin SIMMONS; Trooper Eric Vanderwiel; Special Agent Jessie Whitmer; Desert Snow, LLC; and Joe David, Defendants.

No. 4:14–cv–00385–JEG

United States District Court, S.D. Iowa, Central Division.

Signed July 8, 2015

Glen Stephen Downey, The Law Offices of Glen S. Downey, LLC, Des Moines, IA, Matthew T. Lindholm, Robert G. Rehkemper, Gourley Rehkemper & Lindholm PLC, Nicholas A. Sarcone, Stowers & Sarcone PLC, West Des Moines, IA, for Plaintiffs.

Jeffrey C. Peterzalek, Iowa Attorney General, Des Moines, IA, Ryan Allen Kehm, Woods & Aitken LLP, Omaha, NE, Terry C. Dougherty, Kari Anne Frye Scheer, Woods & Aitken LLP, Lincoln, NE, Tim D. Cain, Wilson, Cain, & Acquaviva, Oklahoma City, OK, for Defendants.

## ORDER

JAMES E. GRITZNER, Senior Judge, U.S. DISTRICT COURT

This matter comes before the Court on Motion to Dismiss by Defendants Desert Snow, LLC and Joe David (collectively, Desert Snow Defendants), ECF No. 12, and Motion to Dismiss by Defendants Iowa State Patrol Troopers Justin Simmons and Eric Vanderwiel and Special Agent Jessie Whitmer (collectively, State Defendants), ECF No. 13. Plaintiffs William Barton Davis and John Newmerzhycky resist. The parties did not request a hearing, and the Court finds a hearing is not necessary to resolve the matters. The motions are fully submitted and ready for disposition.[1]

## I. BACKGROUND [2]

The First Amended Complaint (Complaint) alleges Defendants violated and conspired to violate Plaintiffs' constitutional rights by illegally stopping and searching their out-of-state vehicle and seizing approximately $100,000 in cash pursuant to Iowa's civil forfeiture laws. On April 15, 2013, Plaintiffs William Davis and John Newmerzhycky, both residents of California, were driving westbound on Interstate 80 through Poweshiek County, Iowa, on their way to Las Vegas, Nevada, after competing in a World Series of Poker event in Joliet, Illinois. Davis is a professional poker player, and Newmerzhycky occasionally plays in professional poker events. Plaintiffs were driving a rental car bearing Nevada license plates.

At approximately 8:50 a.m., Defendant Justin Simmons, an Iowa State Trooper and member of the Eastern Iowa Drug Interdiction Team, began following Plaintiffs' vehicle. Trooper Simmons was a member of a private intelligence sharing database called Black Asphalt, which allows law enforcement officers to communicate inter-district with other officers and exchange reports and information about drivers. Trooper Simmons had received a "be on the lookout," or "BOLO," notice about Plaintiffs' vehicle from another officer.[3] The officer who initiated the BOLO notice had followed Plaintiffs for approximately 15 minutes before submitting the report.

Black Asphalt was formed in 2004 by Defendants Joe David and Desert Snow, LLC as a private intelligence network and notification system and currently has approximately 25,000 members nationwide. The Complaint alleges Black Asphalt is controlled in part by a limited liability company formed by Joe David called Black Asphalt LLC; however, control of the network was reportedly transferred to the Kane County, Illinois, Sheriff's Office in June 2014. On March 1, 2012, the Director of Investigative Operations for the Iowa Department of Public Safety wrote a letter to Iowa State Troopers prohibiting them from using Black Asphalt because of concerns about civil and criminal liability.

Because of the Black Asphalt BOLO report, Trooper Simmons continued following Plaintiffs' vehicle for approximately fif-

---

1. This case was commenced on September 29, 2014. The pending motions were filed on January 12, 2015. The case was reassigned to the undersigned on April 17, 2015. As discussed *infra* at section B, 2, pp. 737–39, the Motion to Dismiss Count II, regarding a private cause of action arising under the Iowa Constitution, is not yet fully ripe for consideration as the matter may soon be clarified by the Iowa Supreme Court.

2. For purposes of this Order, "the factual allegations in the complaint are accepted as true and viewed most favorably to the plaintiff." *Hager v. Ark. Dep't of Health,* 735 F.3d 1009, 1013 (8th Cir.2013).

3. The Complaint alleges the BOLO report was sent by either an officer in Illinois or Iowa State Trooper Nathan Andrews.

teen miles. After allegedly observing Plaintiffs fail to use a turning signal while passing another vehicle, Trooper Simmons initiated a traffic stop. Plaintiffs allege Trooper Simmons had neither reasonable suspicion nor probable cause to conduct the traffic stop and allege Trooper Simmons' dash camera shows that Plaintiffs properly signaled while changing lanes. After executing the stop, Trooper Simmons approached the vehicle and obtained Davis and Newmerzhycky's drivers' licenses and a copy of the car-rental agreement. Newmerzhycky, who was the driver of the vehicle, was ordered to accompany Trooper Simmons to the patrol vehicle to receive a warning for failure to signal while passing. Trooper Simmons then engaged in a "motorist interview" with Newmerzhycky, asking him about his travel plans, itinerary, employment, and criminal history. Newmerzhycky informed Trooper Simmons that he and Davis were traveling east from a poker tournament in Illinois to participate in another poker tournament in Las Vegas. Trooper Simmons then exited his patrol car and approached and questioned Davis, who was in the front passenger seat of the vehicle. Trooper Simmons then returned to his patrol car, issued Newmerzhycky a warning, and told him he was free to go.

As Newmerzhycky was walking back to his rental vehicle, Trooper Simmons exited his patrol car and asked Newmerzhycky to answer a few more questions. Trooper Simmons asked whether Plaintiffs had any controlled substances, cash, or other contraband in the vehicle. Plaintiffs denied the presence of any illegal items or substances. Trooper Simmons then asked for consent to search the vehicle, which Plaintiffs denied. Trooper Simmons told Plaintiffs he believed they were involved in criminal activity and that they were being detained to have a drug dog conduct a sniff search of their vehicle. Trooper Simmons informed Plaintiffs that another officer

with a drug dog was "just over the hill." Compl. ¶ 76, ECF No. 11. Iowa State Trooper Eric Vanderwiel, a member of the Eastern Iowa Drug Interdiction Team, arrived on the scene with his drug dog and conducted a sniff search of the vehicle. The Complaint does not indicate how long Plaintiffs waited for Trooper Vanderwiel to arrive on scene. The dog allegedly gave a positive alert on the back left corner of the trunk of the car; Trooper Vanderwiel's dash camera cannot confirm the positive hit because his camera was turned off during the search. Based on the alleged positive alert, Trooper Simmons and Trooper Vanderwiel conducted a physical search of the vehicle. The officers located a locked leather bag in the trunk. After obtaining the combination from Davis, the officers opened the bag and found $85,020 in U.S. currency and an Apple iPad. Davis explained that the money was used as his bankroll to fund his participation in poker events. The presence of several poker magazines in the back seat of the car supported Davis' explanation. Trooper Simmons then explained to Plaintiffs that they were not being arrested but that they were being detained to conduct a further search of the vehicle.

Plaintiffs and their rental vehicle were taken to a Iowa Department of Transportation (DOT) facility. Newmerzhycky and Davis were separated while the vehicle was searched. Simmons located a computer bag in the backseat that contained $15,000 in U.S. currency, two cell phones, and a grinder containing marijuana residue. Special Agent Jessie Whitmer of the Department of Public Safety in Johnson County, Iowa, was also present during the search. Trooper Simmons and SA Whitmer questioned Newmerzhycky and Davis separately about the currency and whether they were involved in criminal drug activity. Plaintiffs denied involvement in criminal activity and repeatedly asked if they

were free to leave. Trooper Simmons and SA Whitmer told Plaintiffs they were not free to leave. Plaintiffs remained at the DOT facility for approximately two to three hours while they continued to be questioned and their rental vehicle was searched. Before Plaintiffs were told they were free to leave, Trooper Simmons issued Newmerzhycky a citation for possession of drug paraphernalia for the grinder found in the computer bag. Trooper Simmons and SA Whitmer retained the U.S. currency (totaling $100,020), the two cell phones, and the Apple iPad found in the vehicle. Once Plaintiffs were told they were free to leave, they left the DOT facility in their rental car and continued on their trip to Las Vegas.

SA Whitmer relayed the information obtained during the search to the Humboldt County Narcotics Task Force in Humboldt, California. The Humboldt County Narcotics Task Force used that information to apply for and obtain search warrants for both Davis and Newmerzhycky's personal residences in California. Plaintiffs' homes were subsequently searched on April 16, 2013. Humboldt County authorities also seized and froze Davis' bank accounts. Eventually, California officials brought criminal charges against both Newmerzhycky and Davis for growing marijuana in their residences.[4] Immediately after receiving the California criminal charges against him, Newmerzhycky suffered a stroke, requiring hospitalization and multiple surgeries. Citing the highly disruptive and destructive search, Davis' landlord ended his tenancy and forced Davis to move out in May 2013. The California criminal charges were eventually dropped in April 2014 after the district attorney viewed the dash-camera of the April 15, 2013 traffic stop.

On April 29, 2013, Plaintiffs retained counsel in Iowa and filed a motion in Poweshiek County seeking a return of the $100,020 in U.S. currency seized during the traffic stop. On May 24, 2013, the Poweshiek County Attorneys' Office filed an in rem forfeiture complaint seeking forfeiture of the cash on the basis that Trooper Simmons had documented ongoing drug trafficking by Plaintiffs. A settlement was reached on September 3, 2013, and $90,000 of the $100,020 was returned to Newmerzhycky and Davis, along with the two cell phones and Apple iPad. Plaintiffs' attorney was given one-third of the $90,000 for his services. Plaintiffs contend they did not waive any claims as part of their settlement agreement.

Plaintiffs filed this Complaint against Defendants on September 29, 2014, which was amended on November 11, 2014. Count I alleges that pursuant to 42 U.S.C. § 1983, Desert Snow Defendants and State Defendants conspired to violate Plaintiffs' constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution. Count II alleges Desert Snow Defendants and State Defendants conspired to violate Plaintiffs' constitutional rights under Article I, Section 8 of the Iowa Constitution. Subject-matter jurisdiction over this suit arises under 28 U.S.C. §§ 1331 and 1367.

Plaintiffs allege Trooper Simmons, Trooper Vanderwiel, and SA Whitmer conspired with Desert Snow and Joe David to carry out illegal traffic stops on out-of-state vehicles and to unconstitutionally search and seize large amounts of cash in an attempt to profit the Iowa Drug Interdiction Team, Desert Snow, and Joe David. Plaintiffs allege the April 15, 2013 stop and seizure occurred because of training

---

4. Plaintiffs alleged they both possessed permits allowing them to grow marijuana in California.

Trooper Simmons and other members of the Eastern Iowa Drug Interdiction Team received from Desert Snow and Joe David. Plaintiffs allege that David traveled from Oklahoma to Des Moines, Iowa, to personally conduct Desert Snow training with Trooper Simmons and other members of the Eastern Iowa Drug Interdiction Team.

Desert Snow is a private, non-profit company based out of Guthrie, Oklahoma, that provides hands-on highway interdiction training for law enforcement agencies. Joe David, a former California Highway Patrolman, founded Desert Snow in 1989. Plaintiffs allege Desert Snow trains officers to stop vehicles bearing out-of-state plates, especially vehicles from the West and Southwest, because such vehicles are likely to carry cash or drugs. Plaintiffs also allege Desert Snow trains officers to conduct lengthy motorist interviews to search for indicators of criminal activity and to exert psychological pressure on suspects to make incriminating statements. Desert Snow trains law enforcement officers that the following factors are indicators of criminal activity: dark window tint; air fresheners; trash in the vehicle; inconsistent or unlikely travel stories; vehicles on long trips that are clean or lack luggage; a presence of energy drinks; drivers that are too talkative or too quiet; designer apparel; multiple cell phones; rental vehicles; and physical signs of nervousness, such as sweating, swallowing, face redness, and pulsating carotid artery. Desert Snow's marketing specialist stated that drug interdiction units' ability to seize motorists' cash is a "tax-liberating gold mine" and is "turning our police forces into present-day Robin Hoods." Compl. at ¶ 54, ECF No. 11.[5] Desert Snow rewards members who meet certain standards, including those members who seize high amounts of cash, through the "Royal Knight" award, and members of Desert Snow and Black Asphalt are referred to as a "brotherhood."

Plaintiffs allege Joe David taught Troopers Simmons and Vanderwiel how to detain Plaintiffs without arresting them and how to extend the stop beyond the purpose of the initial traffic stop. Plaintiffs allege "Defendant David specifically trained Troopers Simmons and Vanderwiel how to end the initial encounter, tell Newmerzhycky he was free to leave, and then follow[ed] Newmerzhycky back to his car to continue [the] encounter past the original purported purpose of issuing a warning ticket." Compl. ¶ 81, ECF No. 11.

Plaintiffs allege Trooper Simmons and the Eastern Iowa Drug Interdiction Team utilize Black Asphalt and Desert Snow training procedures to illegally stop vehicles bearing out-of-state license plates on Interstate 80 in Poweshiek County. Plaintiffs allege that from 1998 to present, 92 percent of Trooper Simmons' citations and warnings were issued to vehicles bearing out-of-state plates. Plaintiffs also allege that between 2008 and 2012, over 86 percent of the 22,000 tickets and warnings issued by the ten-person Eastern Iowa Drug Interdiction Team were issued to out-of-state drivers.

Plaintiffs allege they have been significantly damaged as a result of the April 15, 2013 traffic stop. Because of the forfeiture, Davis was unable to participate in poker tournaments and suffered a significant loss of income in 2013. In addition to suffering severe health problems, Newmerzhycky lost his home-based glass blowing business because of the expenses and time required to defend the criminal and civil forfeiture proceedings, and he was

---

5. These statements are taken from an article at http://www.washingtonpost.com/sf/investigative/2014/09/06/stop-and-seize/, and are utilized at this point only for purposes of the pending motions.

forced to live in his car and rent out his home in order to maintain his mortgage payments and credit.

On January 12, 2015, Desert Snow Defendants moved to dismiss the First Amended Complaint for failure to allege personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). State Defendants filed a separate motion to dismiss the First Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). Plaintiffs resist Defendants' motions.

## II. DISCUSSION

### A. Motion to Dismiss for Lack of Personal Jurisdiction

Desert Snow Defendants argue Plaintiffs have failed to alleged that they are subject to personal jurisdiction. "To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *K–V Pharm. Co. v. J. Uriach & CIA, S.A.,* 648 F.3d 588, 591–92 (8th Cir. 2011) (internal quotations and citation omitted). The evidentiary showing is minimal and can be shown not only from the pleadings but also from affidavits and exhibits filed in support of or opposition to the motion. *Id.* at 592. The Court "must view the evidence in a light most favorable to the plaintiff and resolve factual conflicts in the plaintiff's favor; however, the party seeking to establish the court's personal jurisdiction carries the burden of proof and that burden does not shift to the party challenging jurisdiction." *Fastpath, Inc. v. Arbela Techs. Corp.,* 760 F.3d 816, 820 (8th Cir.2014).

A federal court may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and in conformance with due process. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1389 n. 2 (8th Cir.1991); Fed. R.Civ.P. 4(k)(1)(A). "Because Iowa's long-arm statute 'expands Iowa's jurisdictional reach to the widest due process parameters allowed by the United States Constitution,' [the Court's] inquiry is limited to whether the exercise of personal jurisdiction comports with due process." *Wells Dairy, Inc. v. Food Movers Int'l, Inc.,* 607 F.3d 515, 518 (8th Cir.2010) (quoting *Hammond v. Fla. Asset Fin. Corp.,* 695 N.W.2d 1, 5 (Iowa 2005)).

Due process requires the nonresident defendant to have sufficient "minimum contacts" with the forum state such that "maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Personal jurisdiction requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). "If a court determines that a defendant has minimum contacts with the forum state, it may then consider 'whether the assertion of personal jurisdiction would comport with fair play and substantial justice.'" *Dever v. Hentzen Coatings, Inc.,* 380 F.3d 1070, 1073 (8th Cir.2004) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

■ The Eighth Circuit has established five factors for courts to consider in determining the sufficiency of a non-resident defendant's contacts with the forum state: (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

■ *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir.1994). Factors one through three are primary, while factors four and five are secondary. *Dever*, 380 F.3d at 1074. With respect to the third factor, two theories of evaluating the relation of the action to the defendant's contacts exist: general jurisdiction and specific jurisdiction. *Daimler AG v. Bauman*, —— U.S. ——, 134 S.Ct. 746, 754, 187 L.Ed.2d 624 (2014). "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state." *Fastpath*, 760 F.3d at 820 (citations omitted). Plaintiffs do not seek to hold Desert Snow Defendants to general jurisdiction; but rather argue Desert Snow Defendants are subject to specific jurisdiction because the subject of the lawsuit arises out of Desert Snow Defendants' contacts with Iowa.

■ Desert Snow Defendants argue they are not subject to personal jurisdiction in this forum because their only connection to this jurisdiction alleged in the Complaint is that Joe David trained Trooper Simmons on one occasion in Des Moines, Iowa. Desert Snow Defendants argue that this single trip to Iowa to train a class that Trooper Simmons attended is insufficient to establish personal jurisdiction over Desert Snow Defendants.

Plaintiffs acknowledge that the Complaint only alleges that Desert Snow Defendants were physically present in Iowa on one occasion when David held a training session with Trooper Simmons and other Drug Interdiction Team officers in Des Moines; however, Plaintiffs contend this single trip is enough for the Court to find specific personal jurisdiction over Desert Snow Defendants. Plaintiffs argue their alleged constitutional injuries were the direct result of Desert Snow Defendants' contact with the forum.

Neither party attached affidavits or exhibits in support of their positions, and therefore the Court is limited to the allegations in the Complaint. *See Dever*, 380 F.3d at 1072. The Complaint alleges that "Trooper Simmons received Desert Snow Phase I, II, and III training from Defendant Joe David who traveled from Oklahoma to Des Moines to personally conduct the training sessions." Compl. ¶ 47, ECF No. 11. Although Plaintiffs only allege Desert Snow Defendants had a single physical contact with Iowa, the Court finds the nature and quality of the contact is significant because it directly relates to the subject of the litigation. Plaintiffs allege that during Desert Snow Defendants' contact in Iowa, Desert Snow Defendants trained Trooper Simmons and the Eastern Iowa Drug Interdiction Team to stop Plaintiffs' vehicle for having out-of-state plates, to engage in motorist interviews with Plaintiffs after they were told they were free to leave, to look for a number of innocent behaviors as indicators of criminal activity, and to detain and search Plaintiffs' vehicle without making an arrest. *See id.* at ¶¶ 43, 46, 50, 51, 53, 63, 68, 80–83. Such conduct gave rise to the subject of this litigation. *See Burger King*, 471 U.S. at 472, 105 S.Ct. 2174 (noting personal jurisdiction is "satisfied if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from the alleged injuries that arise out of or relate to those activities" (quotations and citations omitted)). By traveling to Iowa and conducting paid

training sessions, Desert Snow Defendants "purposefully availed" themselves of the privilege of conducting activities in Iowa and should therefore reasonably suspect to be subject to specific personal jurisdiction in Iowa for conduct arising out of such activities. *Hanson,* 357 U.S. at 253, 78 S.Ct. 1228. Accordingly, the Court finds Plaintiffs have met their minimal prima facie burden of showing personal jurisdiction over Desert Snow Defendants. *See Papachristou v. Turbines, Inc.,* 902 F.2d 685, 686–87 (8th Cir.1990) (en banc) (finding one trip to the forum state was sufficient to meet the requirements of due process because the contact with the forum state directly related to the dispute).

## B. Motions to Dismiss for Failure to State a Claim

Desert Snow Defendants and State Defendants both move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6) ], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court must "accept[ ] as true all factual allegations in the complaint and draw[ ] all reasonable inferences in favor of the nonmoving party." *Simes v. Ark. Judicial Discipline & Disability Comm'n,* 734 F.3d 830, 834 (8th Cir.2013) (quoting *Richter v. Advance Auto Parts, Inc.,* 686 F.3d 847, 850 (8th Cir.2012) (per curium)). Although courts must accept all factual allegations in the complaint as true, they are not bound to accept as true "a legal conclusion couched

as a factual allegation." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (quotations and citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937.

### 1. Count I: Conspiracy to Violate Plaintiffs' Constitutional Rights Under Section 1983

■■■■ Count I alleges Desert Snow Defendants and State Defendants conspired to violate Plaintiffs' Fourth Amendment rights. To prove a § 1983 civil conspiracy claim, "the plaintiff must show: that the defendant conspired with others to deprive him or her of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured the plaintiff." *Askew v. Millerd,* 191 F.3d 953, 957 (8th Cir. 1999). "[T]he plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." *Id.*

■■■■ Desert Snow Defendants first argue that they cannot be subject to § 1983 liability because they are private parties and did not act under the color of state law. To state a claim for relief under § 1983, a plaintiff must allege "that the defendant(s) acted under color of state law." *Schmidt v. City of Bella Villa,* 557 F.3d 564, 571 (8th Cir.2009). Although private parties acting alone are not subject to § 1983 liability, the Supreme Court has long held that private citizens who act in concert with state officials may be liable under § 1983. *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 941, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Dennis v. Sparks,* 449 U.S. 24, 27–29, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 26

L.Ed.2d 142 (1970). In *Adickes,* the Supreme Court stated,

> Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute. To act "under color" of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents.

*Id.* (quoting *United States v. Price,* 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966)). The Eighth Circuit has stated that in

> construing that test in terms of the allegations necessary to survive a motion to dismiss, this circuit has held that a plaintiff seeking to hold a private party liable under § 1983 must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor.

*Mershon v. Beasley,* 994 F.2d 449, 451 (8th Cir.1993). Therefore, Desert Snow Defendants can be subject to § 1983 liability if Plaintiffs sufficiently allege they were willful participants in the alleged conspiracy. *See DuBose v. Kelly,* 187 F.3d 999, 1003 (8th Cir.1999).

■ A civil conspiracy claim requires the plaintiffs to allege sufficient "specific facts" giving rise to an inference of a meeting of the minds between the defendants to violate the plaintiff's constitutional rights. *Murray v. Lene,* 595 F.3d 868, 870 (8th Cir.2010). To be sufficiently specific, "[t]he factual basis need not be extensive, but it must be enough to avoid a finding that the suit is frivolous." *Smith v. Bacon,* 699 F.2d 434, 436 (8th Cir.1983) (per curiam). "[Plaintiffs] must at least allege that 'the defendants had directed themselves toward an unconstitutional action by virtue of a mutual understanding,' and provide some facts 'suggesting such a

"meeting of the minds." ' " *Id.* at 436–37 (quoting *White v. Walsh,* 649 F.2d 560, 561 (8th Cir.1981)). "[T]he plaintiff need not show that each participant knew the exact limits of the illegal plan, but the plaintiff must show evidence sufficient to support the conclusion that the defendants reached an agreement to deprive the plaintiff of constitutionally guaranteed rights." *White v. McKinley,* 519 F.3d 806, 814 (8th Cir. 2008) (quotations and alterations omitted). At this stage, the Court acknowledges that "conspiracies are by their nature usually clandestine." *Walsh,* 649 F.2d at 561 (citation omitted). "[I]t is a rare case in which the plaintiff will be able to provide direct evidence of a conspiratorial agreement." *Bacon,* 699 F.2d at 437.

■ The Complaint alleges Trooper Simmons, Trooper Vanderwiel, SA Whitmer, Desert Snow, and Joe David entered into an agreement or understanding to violate Plaintiffs' constitutional rights

> by carrying out illegal traffic stops on out-of-state vehicles without probable cause or reasonable suspicion that a crime or even minor traffic violation occurred all in an effort to seize large amounts of cash which results in monetary profits for the Iowa Drug Interdiction Unit, Desert Snow, and Joe David and results in accolades and promotions for individual[ ] officers such as Defendants Simmons, Vanderwiel and Whitmer. Such a combination, agreement or understanding led to the illegal stop of Newmerzhycky and Davis, the seizure of their cash and other property and all the damages that naturally flow from such actions.

Compl. ¶ 135, ECF No. 11. In support, the Complaint alleges Desert Snow and Joe David created the Black Asphalt information exchange platform, and through the Desert Snow highway interdiction training, trained Trooper Simmons and

other members of the Eastern Iowa Drug Interdiction Team on questionable methods of profiling, stopping, detaining, and searching out-of-state vehicles. The Complaint alleges Trooper Simmons, Trooper Vanderwiel, and SA Whitmer utilized Black Asphalt and the Desert Snow training to unjustifiably stop, detain, and search Plaintiffs' vehicle on April 15, 2013. Plaintiffs allege the State Defendants were encouraged through Desert Snow's "Royal Knight" program to utilize Desert Snow training to stop and search out-of-state vehicles and seize large amounts of cash. It is alleged that money seized by State Defendants eventually flowed back to .Desert Snow. Plaintiffs allege that Desert Snow describes highway drug interdiction as "a tax liberating gold mine" that is "turning our police forces into present-day Robin Hoods." Compl. at ¶ 54, ECF No. 11.

The allegations, assumed as true and viewed in the light most favorable to Plaintiffs, provide enough information for the Court to conclude a plausible claim has been stated that Desert Snow Defendants and State Defendants had a mutual understanding to violate Plaintiffs' constitutional rights. Although there are no allegations of an express meeting of the minds, conspiracies are rarely shown by direct evidence, especially on the face of the complaint. *See Westborough Mall, Inc. v. City of Cape Girardeau, Mo.,* 693 F.2d 733, 744 (8th Cir.1982) (finding circumstantial evidence was sufficient to find a meeting of the minds to carry out a conspiracy); *see also Livers v. Schenck,* 700 F.3d 340, 361 (8th Cir.2012) ("Evidence of an agreement to deprive a plaintiff of constitutionally guaranteed rights typically is circumstantial." (quotations and citations omitted)). The ·Court finds that if the allegations in the Complaint were substantiated, a reasonable jury could infer that Desert Snow Defendants entered into a mutual understanding with State Defendants to utilize

Black Asphalt and the Desert Snow highway interdiction training to stop and search out-of-state vehicles in an effort to seize money through civil forfeiture, with portions of the seized cash going back to Desert Snow for further training.

Plaintiffs must also show that the allegations would tend to establish Defendants' actions violated Plaintiffs' constitutional rights. *Zutz v. Nelson,* 601 F.3d 842, 851 (8th Cir.2010) (explaining that "[t]o plead a § 1983 conspiracy claim a plaintiff must plead that he suffered a deprivation of a constitutional right or privilege" (quotations and citation omitted)). It is undisputed that a violation of the Fourth Amendment's prohibition against unreasonable seizures occurred if Plaintiffs were stopped absent reasonable suspicion of a crime or probable cause that a traffic violation occurred. *See Whren v. United States,* 517 U.S. 806, 809–10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *see also United States v. Yousif,* 308 F.3d 820, 828–29 (8th Cir.2002) ("The facts that [the Defendant]'s vehicle had out-of-state license plates and was traveling on a highway that was 'known' to the officers as a drug trafficking corridor cannot alone justify the stop because 'too many people fit this description for it to justify a reasonable suspicion of criminal activity.'" (citation omitted). Extending the stop, even for just minutes, to await the arrival of a drug dog also constitutes an unconstitutional seizure in violation of the Fourth Amendment. *See Rodriguez v. United States,* —— U.S. ——, 135 S.Ct. 1609, 1616, 191 L.Ed.2d 492 (2015) (holding law enforcement may not extend an other-wise completed traffic stop, absent reasonable suspicion, to conduct a dog sniff). Further, a warrantless search of a vehicle is unconstitutional absent consent, probable cause to believe that the vehicle contained evidence of a crime, or reason to believe a search inci-

dent to arrest would yield evidence of the offense of the arrest. *See Arizona v. Gant,* 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). Accordingly, accepting Plaintiffs' allegations as true, Plaintiffs have sufficiently alleged their constitutional rights were violated during the April 15, 2013 traffic stop.

Plaintiffs must further show that at least one of the alleged co-conspirators engaged in some overt act in furtherance of the conspiracy. *Askew,* 191 F.3d at 957. The Court finds this element has been met. The Complaint alleges Desert Snow Defendants acted in furtherance of the conspiracy by training Officer Simmons and the Eastern Iowa Drug Interdiction Team how to illegally stop and seize Plaintiffs. Further, State Defendants carried out an overt act in furtherance of the conspiracy by initiating the traffic stop, detaining Plaintiffs, searching the vehicle, and seizing Plaintiffs' cash and personal items.

Finally, Plaintiffs must allege they were injured by an overt act of the conspiracy. Plaintiffs allege that as a result of the conspiracy, Plaintiffs were unconstitutionally pulled over, their cash and personal property were seized, they were detained and searched, and their personal residences were subsequently searched. As a result, Plaintiffs were criminally charged in California (charges that were later dismissed), Plaintiff Davis' bank accounts were frozen and he was forced to move out of his residence, and Plaintiff Newmerzhycky suffered a stroke, lost his glassblowing business, and suffered financial hardships. These allegations are sufficient to meet the injury element.

In sum, the Complaint sufficiently pleads a meeting of the minds between Defendants to violate Plaintiffs' constitutional rights, Defendants engaged in overt acts in furtherance of the conspiracy, and Plaintiffs were injured as a result. Thereby all of the elements of a civil conspiracy to violate Plaintiffs' Fourth Amendment rights have been adequately pled under § 1983.[6]

 State Defendants argue they have a complete defense to Plaintiffs' claim that they were unconstitutionally seized during the April 15, 2013 traffic stop because Plaintiff Newmerzhycky pled guilty to the charge of possession of drug paraphernalia in violation of Iowa Code § 124.414 which arose out of the traffic stop. State Defendants argue Newmerzhycky is precluded from "challenging his arrest" on the theory that the officers lacked probable cause, and because Newmerzhycky cannot pursue a claim, Davis, as the passenger, is also precluded from relief.

In *Heck v. Humphrey,* 512 U.S. 477, 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Supreme Court held a § 1983 claim should be dismissed if a judgment on the civil claim "would necessarily imply the invalidity of [a plaintiff's] conviction or sentence," unless the conviction or sentence was reversed, expunged, declared invalid, or called into question on a writ for habeas corpus. The Supreme Court, however, noted an exception for claims of unlawful search and seizure, stating "a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction." *Id.* at n. 7.

In *Moore v. Sims,* 200 F.3d 1170 (8th Cir.2000), the Eighth Circuit applied the exception noted in *Heck* to a § 1983 claim alleging an unlawful search and seizure

---

**6.** The Court finds these allegations sufficient to state a claim for conspiracy at the motion to dismiss stage; however, the Court remains free to reconsider the claim on motion for summary judgment. *See Bacon,* 699 F.2d at 437.

after the plaintiff pled guilty to drug charges arising out of the same incident. Moore alleged in his § 1983 complaint that he was unlawfully detained, arrested, and charged with possession of a controlled substance. *Id.* at 1171. The district court dismissed Moore's unlawful seizure claim under *Heck. Id.* The Eighth Circuit reversed the district court's dismissal, citing the *Heck* exception to claims of unlawful search and seizure, finding that "[i]f Moore successfully demonstrates that his initial seizure and detention by officers was without probable cause, such a result does not necessarily imply the invalidity of his drug-possession conviction." *Id.* at 1171–72; *see also Whitmore v. Harrington,* 204 F.3d 784, 784–85 (8th Cir.2000) (concluding the plaintiff was not barred from pursuing a *Bivens* action alleging an unlawful investigative stop after he was later convicted on drug charges because "[i]f [the plaintiff] were to succeed on this claim, it would not necessarily imply the invalidity of his later drug conviction").

Plaintiffs are not challenging Newmerzhycky's "arrest" for the misdemeanor charge of possession of drug paraphernalia; rather, Plaintiffs are alleging that a conspiracy among Defendants exposed them to an unwarranted search and seizure that resulted in the civil forfeiture of $100,025 in U.S. currency and personal property. If Plaintiffs' § 1983 action is successful, it would not necessarily invalidate Newmerzhycky's guilty plea to the misdemeanor charge of possession of drug paraphernalia. Under this Circuit's application of *Heck,* the Court finds Newmerzhycky's guilty plea does not bar Plaintiffs from alleging their § 1983 conspiracy claim.

### 2. Count II: Conspiracy to Violate Plaintiffs' Rights Under the Iowa Constitution

■ Count II alleges Defendants conspired to violate Plaintiffs' rights under Article I, Section 8 of the Iowa Constitution. State Defendants argue Plaintiffs have failed to state a claim under the Iowa Constitution because Iowa does not recognize a private cause of action for violations of the Iowa Constitution. The parties agree that Iowa does not have express private cause of action by statute, and therefore any relief must be judicially created.

■ The United States Supreme Court created a private cause of action against *federal* government officials for *federal* constitutional violations in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Other state courts have since created similar private causes of actions for state constitutional violations. *See McCabe v. Macaulay,* 551 F.Supp.2d 771, 785 (N.D.Iowa 2007) (noting that "the majority of state courts of last resort have recognized analogous causes of action for violations of state constitutions against state officers in their individual capacities"). The Iowa Supreme Court has not resolved whether Iowa recognizes a common law private cause of action for violations of the Iowa Constitution.[7] "When a state's highest court has not decided an issue, it is up to this court to predict how the state's highest court would resolve that issue." *Cont'l Cas. Co. v. Advance Terrazzo & Tire Co., Inc.,* 462 F.3d 1002, 1007 (8th Cir.2006).

7. In May 2008, Judge Scott Rosenburg of the Iowa District Court for Polk County declined to recognize a state *Bivens*-like cause of action. On appeal to the Iowa Supreme Court, the decision was affirmed without comment by operation of law because the court was evenly divided, with one Justice not participating. *See* State Defendants' Exhibits C and D (ECF Nos. 13–4, 13–5).

Plaintiffs rely on cases from the Northern District of Iowa predicting the Iowa Supreme Court would recognize an Iowa cause of action analogous to *Bivens*. *See McCabe*, 551 F.Supp.2d at 785; *see also Clay v. Woodbury Cnty., Iowa*, 982 F.Supp.2d 904, 921–22 (N.D.Iowa 2013); *Peters v. Woodbury Cnty., Iowa*, 979 F.Supp.2d 901, 971 (N.D.Iowa 2013). In *McCabe*, Judge Linda Reade predicted that the Iowa Supreme Court, if faced with the issue, would recognize a private cause of action against government officials for violations of the Iowa Constitution. *McCabe*, 551 F.Supp.2d at 785. Judge Reade looked to the decision of the United States Supreme Court in *Bivens* and recognized that a majority of other state courts of last resort have recognized a private cause of action for violations of their state constitutions. *Id.* Judge Reade also noted that the Restatement (Second) of Torts § 874A, which has been cited with approval by the Iowa Supreme Court, recognizes a state court's inherent authority to create a remedy for violations of a state constitution. *Id.*

The Iowa Court of Appeals, however, recently addressed this issue as a matter of first impression in *Conklin v. State*, No. 14–0764, 2015 WL 1332003, at *3 (Iowa Ct.App. March 25, 2015). In *Conklin*, the plaintiff brought a civil action against the State of Iowa alleging various violations of the Iowa Constitution—including a violation of the right to be free from unreasonable seizure as guaranteed by Article I, Section 8. *Id.* at *1. The district court granted the State's motion to dismiss and the plaintiff appealed, arguing for a private cause of action for violations of the Iowa Constitution. *Id.* at *2. The Iowa Court of Appeals expressly declined to follow the Northern District's decisions and affirmed

the district court. *Id.* at *4 n. 4. The court held no private cause of action exists for violations of the Iowa Constitution. *Id.* at **3–5. The court reasoned that

the Iowa Constitution itself counsels against judicially implying a remedy for a violation of its terms. *See* Iowa Const. art. XII, § 1. Several of our sister states with similar constitutional provisions have declined to create a cause of action for a violation of their state constitutions, particularly given the separation-of-powers issue that would arise were the courts to do so. Furthermore, *Bivens* and its progeny, as well as the availability of a section 1983 cause of action to Conklin, are also special factors counseling hesitation for creating such a remedy. For these reasons, we decline to judicially imply a private cause of action for a violation of the Iowa Constitution.

*Id.* at *5.

■ "Decisions of the various intermediate appellate courts are not [binding], but they are persuasive authority, and we must follow them when they are the best evidence of what [the state] law is." *Cont'l Cas. Co.*, 462 F.3d at 1007 (second alteration in original) (quoting *Garnac Grain Co., Inc. v. Blackley*, 932 F.2d 1563, 1570 (8th Cir.1991)). This Court might proceed on that basis were there not important procedures on the horizon. An Application for Further Review by the Iowa Supreme Court was filed in *Conklin* on April 9, 2015, and remains under consideration by the State's highest court. As a resolution of the question by that Court could fundamentally alter any decision by this Court,[8] a stay of the pending motions to dismiss on that basis for a reasonable period of time appears to be a fully rational approach.

---

8. This potential legal collision and complication would seem amply illustrated by the decisions of the Federal Courts and the Iowa Court of Appeals. *See* text, *supra,* at 738–39.

Upon action by the Iowa Supreme Court, or as a result of an unreasonable delay of the proceedings in this Court, the stay will be reconsidered.

## III. CONCLUSION

For the reasons stated, Desert Snow Defendants' Motion to Dismiss, ECF No. 12, and State Defendants' Motion to Dismiss, ECF No. 13, are **denied in part and stayed in part.** Desert Snow Defendants' Motion to Dismiss for lack of personal jurisdiction must be **denied.** The Defendants' Motions to Dismiss Count I must be **denied.** The Defendants' Motions to Dismiss Count II are **stayed** until further Order of the Court.

**IT IS SO ORDERED.**